Next case is Kenneth Gibbons v. Secretary of Veterans Affairs, 2007, 7153. Ms. Cessna, when you're ready. May it please the Court, I'm Heather Cessna here on behalf of the veteran, Mr. Gibbons. Apparently I know how to clear a room. I'm not going to repeat obviously everything verbatim that's in the briefs. I think the briefs do a decently well job of setting out what our general arguments are. And we're here basically on the issue of whether or not a showing of chronicity or continuity of symptomatology under 3.33b requires medical evidence or if lay evidence may also satisfy those requirements. And just to begin with, I know the Secretary in its brief argued that we should be jurisdictionally bounced out for having not raised this issue below. And our contention, Your Honor, is that this issue has been raised below. I think FOGS allows for both explicit and implicit raising of a legal issue like this below. And certainly while the issue as we have phrased it for the purposes of this Court is not verbatim the way it's been phrased below, the crux of the issue has always been the same. And the crux of the issue has always been when you're talking about chronicity or continuity of symptomatology, is medical evidence the only thing that's going to satisfy that or is lay evidence going to satisfy that and does the Court need to consider lay evidence in the context of that? Just basically going through, I mean, I think this is a relatively simplistic argument here. In the last couple of years, this Court has definitely made some decisions on the questions of lay testimony and the value of lay testimony in the Veterans Benefit System. And that's primarily based on the fact that obviously this is supposed to be a proclaimant system. And therefore lay testimony here I think has more weight to it than perhaps it would in some other context for that reason, that it is supposed to be a proclaimant system. Assuming that the principles of Jandrow and what Buchanan, is that the other case? I keep forgetting. Yeah. Were applicable back when this claim was first submitted the first time around. Is it clear that those principles were not complied with? Your Honor, I believe so. And the reason that I'm saying this, I mean, if you want me to go back to the original rating decision in this case. I think that would be useful because that's sort of where we have to start to decide if there's a problem in the current disposition. Of course, Your Honor. When you're talking about the July 1986 decision, which was the decision that Mr. Gibbons had claimed to queue in, what basically happened there was the veteran had a 12-year gap in his history, his medical history. He had an in-service incident of a low back disability in 1968. He didn't get out of service until 1970. There were some service medical records that were missing there at the end of his service. And then he didn't report back disability until 1982. And he claimed service connection for a back disability. And one of the pieces of evidence that was submitted in connection with that claim was the veteran's ex-wife's statement. Sure. And basically saying that during that period of time, during that 12-year gap in evidence that she had been. He continued to serve, suffer from back pain. Correct. And basically what the July 1986 BBA opinion said was it mentioned during the course of the listing of the evidence that there was this statement out there from the ex-wife. However, when it came down to the actual decision, it made its decision based entirely on that 12-year gap in time. And you can find that part of the decision. But there certainly isn't anything wrong under Jandro B. Cannon with the board saying we're not persuaded by the lay evidence. The question is what they're not allowed to do in certain settings where the kind of evidence is the kind that a lay person could perfectly well make observations. Whether your arm is broken or something in a dramatic way. Compound fracture I think was the example that was used in Jandro. Right. That they're not allowed to say, well, this is simply not competent evidence. Is there anything in the 86 proceeding that suggests that it was the latter as opposed to the former? Well, I think, Your Honor, what you have to look at when you look at that decision. And the crux of that decision is on the joint appendix from 265 to 266, if you want to make a note of that. Right. And review it. The question is whether or not the lay evidence was weighed in the context of citing that continuity question. And from the discussion from the board, and it's a brief board decision, there was no weighing of that lay evidence in that context. And so implicitly the assumption then is if all they're talking about in the context of that is the actual medical evidence, then the assumption is that they assume that medical evidence was, or they imply, essentially, that medical evidence was the only thing that was going to support that continuity of symptomatology. I think it's Abernathy, actually, which is from the Court of Appeals, that discusses the fact that just simply listing something in the course of the proceedings or listing something as a piece of evidence in effect is not the same thing as weighing it. And so the real question is whether or not that was properly weighed. And the problem that we have at this point is that throughout the rest of the course of the proceedings, and obviously these proceedings have been rather extensive since the 1986 board decision, the question seems to have not been properly addressed, whether or not the medical evidence is the only thing that's going to satisfy that continuity of symptomatology. Because obviously if medical evidence is the only thing that's going to satisfy that, then the board's decision based entirely on that medical evidence is not going to be a problem. But if they needed to go back and actually weigh that, lay evidence for whether or not that was going to override the fact that there was a lack of reporting of medical symptoms and reports during that 12-year period of time, then... But in 1986 they did consider the wife's testimony. Well, and I think that's where perhaps our problem here is, that the veteran's wife's testimony was noted in that decision, but when you actually read the decision, when they're making the decision on the crux of the service connection issue, which is that courtesy or continuity of symptomatology during that 12-year period of time, they rely solely on the fact that there's missing medical evidence during that period of time. But the record before us makes reference to the wife's testimony, at least that the court looked at and said that the board considered it. And if in fact it considered it, we really don't know what kind of weight they gave to it, but can we order them to weigh the evidence again? Is that within our jurisdiction? Well, and perhaps, I think part of the problem here is that the Court of Appeals below, when we raised this issue of whether or not that was properly weighed, didn't really address the issue. They kind of glossed over it. And so maybe the real necessary outcome here is a remand back to the Court of Appeals Veterans Claims, asking for them to specifically address that question on the merits of whether or not they have to. Which precise question would you be? That whether or not, if this Court determines that lay evidence can support a finding of courtesy or continuity of symptomatology, then I think the question has to go back to the CAVC to determine whether or not that was properly weighed in the context of the CUE claim under those circumstances. Obviously, if only medical evidence satisfies that, then there isn't a problem with the board's decision. The problem is only if that lay evidence can constitute continuity of symptomatology. And then the question has to go back, I think, for the CAVC to determine under the CUE claim whether or not that evidence was properly weighed in that context. Well, looking at the 86 board decision, and I guess the pertinent passages between 265 and 266, that's when we have the discussion of this particular issue, I think, right? Yes. All right. And the board is saying at the bottom of 265, let's see, blah, blah, blah. The evidence shows that the veteran has essentially had a continuous problem with his back since that time. Presumably that includes his ex-wife's evidence. It doesn't use the word ex-wife, but I assume that's where it's coming from, his own self-reporting. I'm sorry. I'm sorry, go ahead. I don't mean to interrupt. No, please, go ahead. I think when you read that sentence right before that, what they're talking about, and that's the sentence directly before the one that you just read at the bottom of 265, where they say the first post-service clinical documentation of a back abnormality was not presented until 1982. Oh, since, I see, since 1982. And so since 1982, he's had continuous problems. I see, I thought they were referring to, I see, okay. No, I'm sorry, I now see why you were asking the question. Yes, all right. Because that could be confusing. Okay. But, no, I, yeah, no, the problem here is that the continuity of the problem was considered after that 12-year gap. I see, all right. But not during that time. No, I see the reference now, right. Thank you. Okay. I mean, that's basically our issue in a nutshell. If the Court doesn't have any further questions, I'll save the rest of my time for the final. We will save it for the final. Thank you. Mr. Wallach. May it please the Court, we respectfully request that the Veterans Court's decision be affirmed or this appeal be dismissed because what wasn't really discussed on the appellant's opening statement was the fact that this issue hasn't been raised before. They're claiming clear and unmistakable error. The law from the circuit is very clear that every specific instance of it, factual or legal in this case, has to be made to the Board, and you have to keep going with that until you get here. We have combed the record. I know that I just entered my appearance and I didn't write the brief, but I combed the record myself, and I cannot find any instance where this issue was raised. And, therefore, under the Court's jurisdictional statutes, well, let me start with the clear and unmistakable error. If this wasn't raised to the Veterans Court because it wasn't at the Board, then the Veterans Court didn't have jurisdiction to issue an opinion on it or a decision. But they did raise it before the Court of Appeals, the Veterans Court of Appeals, right? I don't believe so. Well, there's a reference to the, in Judge Moran's opinion, in the order. I'm sorry, Judge Mormon, which is at 2 little i. It says the opponent argued that July 1986 Board decision contained Q because it denied his claim based on absence of medical evidence confirming he had suffered from back problems. Isn't that really raising Q, whether it's directly raised, or at least at that point it was raised before the Veterans Appeal Court? I'm sorry. I'm actually having a hard time hearing. What is the meaning of the fact that Judge Mormon's decision speaks to Q? Is that raising the issue of Q? It speaks generally to Q, but the specific issue raised here is whether or not this specific regulation requires the examination of both lay and medical evidence. And that, I'm sorry, I do not see here. Well, the argument at the beginning of the last paragraph on double i in the fight appendix, do you have that? Yes. The argument about the absence of medical evidence and the failure to consider the wife's statement. It's our position that that is a weight of the evidence question that he was raising there. Right, but the question is to whether, you were saying this wasn't, that's the issue we've got here, right? Yes. Okay, and the question was, well, where was it raised? And it looks like it was raised before the court, even if not before the board, right? I'm sorry. I have to disagree. I think this issue is not the precise legal issue that they are talking about on this appeal, but rather this is a weight of the evidence question. Well, failed to consider his wife's statement. I mean, if that isn't the exact argument that's before us, it's awfully close. I'm not sure I understand why you would say that that argument doesn't preserve the argument they're making here, assuming away for the moment the question of whether they had to raise it before the board. I understand that's a separate contention. But if all we're looking at is the question of whether the argument being made now was raised before the court, what is it about that argument that isn't the same as the argument raised here? And the argument raised here, as I understand it, is that they simply did not give any weight or attention to the wife's testimony. That looks a lot like what they're saying to the court. It's within the board's and then the court's discretion, I suppose, to weigh the evidence. I understand. And giving no weight to evidence is still weight of evidence. Well, but once again, focusing on not the question of whether there's a weight issue, but whether that argument isn't awfully close, if not exactly the same argument that's being raised before us. And if not, what about this argument is different from the argument being raised to us? That's what I'm having a hard time following. I do see how it is awfully close. But it is different. Well, go ahead. I'm sorry. It's different. I mean, if you just go on to the next section is that sentence is that it describes the October 2002 decision from the board where the issue was whether they were looking at the right evidence when they made the decision. This is an evidence issue, a weight of evidence issue. And the question that they're raising here is whether the legal issue and under the Andre decision, they have to raise the specific legal challenge of that was clear and undistinguishable error, that the board, the veterans court, misinterpreted this regulation and actually decided at some point that when determining chronicity, they can only look at medical evidence and not lay evidence. That was never decided. That was never raised. Are veterans represented by counsel before the board? Yes. And if it's not raised before the board, then they can't raise it before the veterans court of appeals? Is that what you're saying? Clear and unmistakable error, yes. But the court of appeals did consider that as a cue according to the decision. Yes, they did. So was that weighed by the government at that point by not raising it back to the board? Or did they send it back to the board for reconsideration at that point in time? Well, I think if I'm understanding your question correctly, it assumes that this is actually the cue play that they're raising here. Yes. I think as Judge Bryson points out and as I pointed out, that first sentence of that paragraph points specifically to the issue that's raised before us. Is it your point that the court elaborated further and said that it was simply a question of disagreement as to how the evidence was interpreted rather than raising the legal question whether lay evidence could be considered? Yes. Sorry, I haven't articulated that clearly. But that is our point, that until we've gotten to this point, everybody's been under the understanding that they were making weighted evidence challenges, which, of course, is beyond this court's jurisdiction. We have not seen it precisely. Application of law to fact. Yes. Anything further, Mr. Blight? But assuming that it is here properly, there's not even a question here, though, that the board was operating in that respect, going back into pages 265 and 266 of the joint appendix. The one phrase that we have not discussed yet was their citation to the fact, quote, the fact that the veteran reported no back trouble at the time of the separation from service. Veteran is not a doctor. That is evidence that they considered with respect to his back claim, and they recited in their decision as lay evidence. They didn't, you know, whether this is an implicit decision here, which we contend it's not, to misinterpret the statute or the regulation, the board still considered lay evidence. The wife's testimony is not the only evidence that was here, and the board's failure or omission of it. Well, the failure to report is not what I understand typically that has been regarded as lay evidence. I mean, we've seen for years, you know, the fact that somebody didn't report something to a physician is evidence that's sprinkled all through decisions of the board and the court long before Buchanan and Jandra. But I think when they say lay evidence, what they mean is the buddy coming in and saying, yeah, you know, he had appendicitis or whatever. And, you know, how does the buddy know is the argument. The buddy's not a doctor. How does he know he had appendicitis? That is, I think, the lay evidence type issue, not that he didn't report. That's objectively discernible without regard to whether he's a layman or not. That's not lay assessment of a medical condition. It's simply a fact.  I do see what you're saying. So I don't think that gets you very far, even assuming that they were willing, that even if you called it lay evidence, I'm not sure it solves the problem with the wife. But I don't think it is lay evidence. I mean, there are several different issues here, and you've discussed them in the brief. But is your principal argument that they did consider the wife's evidence, and setting aside whether this was waived or not, and there's no indication that they didn't, or that at the time this was decided they weren't obliged to consider the wife's evidence and therefore it can't be cued? With respect to the first part, as Fulton's counsel has noted and accurately stated in the record, that there was a recitation of the wife's evidence and the evidence that was considered, though it is not obviously mentioned in the decision. I misread the passage, actually, and as the opposing counsel pointed out, that the years were after the age of pregnancy. Yeah, and we agree with that, too. Yeah, I clearly misread that. And so based on that, yes, it's our position that that evidence was before the board when they considered it. Supposedly it said, and we don't consider lay evidence, so we give no weight to the wife's evidence. That would have been, I guess, at this time, that would have been something that would typically have been the way they would have treated lay evidence. As I understand it, at the time, I don't know if that's typically how they would have treated it back at that time, but we would apply the law that was in effect at the time. Though I don't believe that there have been any significant changes to the regulation since that time. Well, no, but the interpretation of the regulation, I mean, Buchanan and Jandro were big changes, I take it, in the way things have been done. My understanding was that there was a tradition of having a much more, a much less hospitable approach to lay evidence before Buchanan and Jandro. Is that fair? I believe Buchanan and Jandro actually come close to saying that. But in this, I mean, it's our position in this case that there were two types of evidence that were considered. I understand your comments and your view. And aside from that, unless there's anything further, those are our arguments there. This is non-jurisdictional. This is a failure to raise the acute challenge. Thank you, Mr. Wolak. Ms. Cessna has some rebuttal time. What was, I just don't have enough grasp on the history here, and perhaps you do. Back in 1986, what would the board's approach to lay evidence have been? I mean, I know what happened in Buchanan and Jandro, but I don't know how that all has developed over time. Well, the approach to how lay evidence should have been was, it should have been weighed. I mean, part of the thing that you have to keep in mind about the Veterans Claimant System is that it's always been a pro-claimant system that allowed for lay evidence. The changes in Buchanan and Jandro, I don't think were actual changes to how those laws were being interpreted, as much as kind of bringing down the hammer on the system and saying, okay, let's stop trying to cut off what the regulations say. And the regulations say you're supposed to take into account lay evidence, and you really have to do that. I don't think that those were changes in the sense that, I mean, as far as if you're arguing acute claims, since acute claims have to be determined under what the law was at the time. Right. That's what I'm wondering, as to whether this was a proper application of the law at the time. Right. I think the proper application of the law was that lay evidence was to be considered. Realistically, it wasn't on a day-to-day basis. And that's part of the reason why we ended up with these strings of cases that started coming down saying, okay, you really do have to weigh the evidence here and weigh the credibility of the witness as opposed to just dismissing it because it's lay evidence. Because that's how the pro-claimant system was supposed to be initiated from the beginning, I think. Does that answer your question, Your Honor? Well, perhaps that's all we know at this point about the way things were done. I mean, the same regulation was in place, I suppose, that was in place at the time. Yeah, I mean, as far as how lay evidence is used. As I said, on a day-to-day basis, the problem, I think, was that the regional offices in the BVA were not applying the regulations the way that they were initially intended, and they were slowly but surely kind of trying to chip away at whether or not the lay evidence was going to be considered or not as opposed to whether or not it was going to be weighed properly or not. And that actually kind of brings me around to one of the other points I thought I'd try to clarify here. First of all, as far as raising the issue of the cue before the BVA in 2002 or 2001, I think part of the problem here is that that cue claim, I'm pretty sure judging from the way that the quote is, was probably filed pro se by the veteran. And the way that the cue claim is set out there was that basically the veteran had issues with the way that the evidence was being considered. And I guess our argument, and this may be where we're kind of getting hung up here, is that this is a weight-of-the-evidence argument, not in the sense that factually that it's the weight-of-the-evidence argument, but legally can the weight of the lay statement be taken into account for purposes of continuity of symptomatology as opposed to whether or not that evidence shouldn't be weighed at all. And our argument has been throughout that it has to be weighed and that medical evidence is not the only thing that can satisfy that. And I guess maybe that's kind of where we're kind of getting hung up on whether or not this is a factual weighing of facts or whether or not this is how do you weigh lay evidence in the context of this system, specifically in the context of showing chronicity or continuity of symptomatology. But there's a further factual problem, I guess, that we would have to confront in the sequence of problems. The cue is very complicated. There are a lot of problems along the line in getting to a cue judgment. Assuming that you're right that the law, both now and at the time, was that the lay evidence in a situation like this at least had to be considered, we've got the Court of Appeals for Veterans Claims saying that this represents an example of disagreements, how the evidence was interpreted. They're basically buying the October 2002 case. Isn't that a factual determination as to what the Board did in 1986? Do we have the authority to go behind that? I don't think the CBC is referring to what the Board factually did in 1986. I think there the CBC is actually taking what the 2002 Board said was that the argument that we were making was just based on a factual weighing of the evidence. Our condition along has been that this is a weighing of the evidence question, not factually necessarily about this particular case, but in the sense of how do you weigh the evidence in the context of chronicity or continuity of symptomatology. Is it just the medical evidence that you weigh or do you have to weigh the lay statements too? Well, but the Court goes on to say the Court holds that the October 2002 Board provided an adequate statement of the reasons or basis for determination that the July 1986 Board had weighed and evaluated all of the evidence at the time of that decision. That looks like they're endorsing the factual conclusion reached by the 2002 Board with respect to what happened in 86, don't you think? Well, I think they're avoiding the issue as to whether or not there's a legal question there. I think what they're doing there is not addressing the question of whether or not medical evidence alone can satisfy that regulation. I think the problem here is that I don't think the CBC did a very good job of addressing the legal issue that we tried to raise before. And so that's why I think earlier when I was saying that really the question for this Court, because it is a purely legal question at this point for this Court, is whether or not lay evidence even has to be weighed in the context of that regulation. And if so, then I think it needs to be remanded back for the CBC to do a proper evaluation of whether or not that was actually weighed and whether or not the BBA actually did consider that evidence properly in the context of the acute plan. Because it's not entirely clear from the way that their decision came out. Thank you, Ms. Sesniff. The case will be taken under revisement. Thank you.